IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

CAROL A. HOLCOMB,

      Plaintiff,

v.                                CASE NO. 2:04-cv-00448

JO ANNE BARNHART,
Commissioner of Social Security,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the court are the parties' cross-motions for judgment on the pleadings and Plaintiff's Motion for Remand for Consideration of New and Material Evidence.

Plaintiff, Carol Ann Holcomb (hereinafter referred to as "Claimant"), filed applications for SSI and DIB on October 25, 2002, alleging disability as of February 28, 2000, due to arthritis in the right ankle and knee and lower back pain. (Tr. at 57-59,

89, 144-45.)   The claims were denied initially and upon reconsideration.  (Tr. at 32-36, 39-40, 147-51, 153-54.)  On June 10, 2003, Claimant requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. at 41.)  The hearing was held on July 29, 2003, before the Honorable John Yeary.  (Tr. at 518-75.)  By decision dated August 26, 2003, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 13-23.)  The ALJ's decision became the final decision of the Commissioner on March 17, 2004, when the Appeals Council denied Claimant's request for review. (Tr. at 5-8.)  On May 10, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2003).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. §§

2

404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2003).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists

3

in the national economy. <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant did not satisfy the first inquiry for the years 2000 through 2001, but that she did satisfy the first inquiry beginning in 2002, because she had not engaged in substantial gainful activity as of that time. (Tr. at 15.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of obesity and right ankle arthritis. (Tr. at 16.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 16.) The ALJ then found that Claimant has a residual functional capacity for sedentary work, reduced by nonexertional limitations. (Tr. at 19.) As a result, Claimant cannot return to her past relevant work. (Tr. at 20.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as cutter/paster, call-out operator and surveillance system monitor, which exist in significant numbers in the national economy. (Tr. at 21.) On this basis, benefits were denied. (Tr. at 21.)

<u>Motions for Judgment on the Pleadings - Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as

4

> "evidence which a reasoning mind would accept
> as sufficient to support a particular
> conclusion. It consists of more than a mere
> scintilla of evidence but may be somewhat less
> than a preponderance. If there is evidence to
> justify a refusal to direct a verdict were the
> case before a jury, then there is 'substantial
> evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting

Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)).

Additionally, the Commissioner, not the court, is charged with

resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d

1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not

abdicate their traditional functions; they cannot escape their duty

to scrutinize the record as a whole to determine whether the

conclusions reached are rational." Oppenheim v. Finch, 495 F.2d

396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the

Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was thirty-five years old at the time of the

administrative hearing. (Tr. at 57, 518.) Claimant graduated from

high school and attended community college for two years. (Tr. at

526.) In the past, she worked at fast food restaurants and at a

grocery store. (Tr. at 529-30.) At the time of the hearing,

Claimant was residing in a homeless shelter. (Tr. at 524-25.)

The Medical Record

The court has reviewed all evidence of record, including the

5

medical evidence of record. Claimant does not dispute the ALJ's findings related to her physical impairments, or the determination that Claimant can perform only sedentary work reduced by nonexertional limitations. Instead, Claimant challenges the ALJ's findings related to her mental impairments, and, as such, the court will briefly summarize the evidence of record related to those impairments.

Evidence before the ALJ

On December 3, 2002, Donald R. Swick, M.A., a licensed psychologist, examined Claimant at the request of her rehabilitation counselor. Claimant was living in a temporary shelter at the time of the examination. (Tr. at 234.) Claimant denied psychiatric admissions. She reported past counseling as a child after she was adopted, then removed from the home due to sexual and physical abuse. Claimant denied depressed mood, and there was no indication of mood swings. On the WAIS-III, Claimant attained a verbal IQ score of 75, a performance IQ score of 99 and a full scale IQ score of 85, placing Claimant in the low average range of intelligence. (Tr. at 236-37.) Mr. Swick diagnosed adjustment disorder, unspecified and chronic on Axis I and made no Axis II diagnosis. (Tr. at 238.)

On May 3, 2003, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant's mental impairments were not severe. (Tr. at 289-302.)

6

Evidence submitted to the Appeals Council

Claimant submitted to the Appeals Council, extensive medical records from the 1980s, which indicate Claimant was sexually abused by a former adoptive parent and hospitalized on two occasions with a diagnosis of atypical psychosis. (Tr. at 330-504.)   Claimant underwent intellectual testing in July of 1984, and attained a verbal IQ score of 74, a performance IQ score of 106 and a full scale IQ score of 88.   (Tr. at 343.)

On   August   5,   2003,   Louann   Munday,   APRN   conducted   a consultative psychiatric evaluation.   Claimant rocked back and forth to keep calm during the evaluation.   Mood appeared to be irritable off and on, affect was restricted.   Intelligence appeared to be in the normal range.   Insight and judgment were good.   Ms. Munday diagnosed intermittent explosive disorder and post traumatic stress disorder on Axis I and made no Axis II diagnosis.   She rated Claimant's GAF at 45.   (Tr. at 507.)   The record includes treatment notes dated September 2, 2003, and September 30, 2003.   (Tr. at 509-12.)

New Evidence submitted in support of Motion for Remand

In   support   of   her   Motion   for   Remand,   Claimant   submitted   a report dated September 14, 2004, from her rehabilitation counselor, Cynthia Lokey, M.A.   Ms. Lokey indicated that Claimant had been provided an apartment through St. Albans Housing and had entered a business   education   training   program.    Ms.   Lokey   reported   that

7

Claimant was unable to complete the training program "due to lack of intellectual ability and the conglomeration of mental health symptoms. Difficulties she encountered includ[ed] the inability to alphabetize, type with any reasonable amount of accuracy and speed, and not being able to understand how to write a basic letter." (See Attachment A to Plaintiff's Motion for Judgment on the Pleadings.)  Ms. Lokey noted that she had not done current psychometric testing in the form of intelligence and achievement, but that "you may want to pursue this through other sources as it is likely that she will come up in the borderline to mild mentally retarded range.  She desires to work.  However, with her physical and mental barriers, it is unlikely that she will be able to hold a job with enough hours and skills that would bring her to any definition of substantial gainful employment."  (Id.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ's conclusion that Claimant did not suffer from severe mental impairments is not supported by substantial evidence; and (2) the ALJ erred in refusing to allow the vocational expert to consider Claimant's mental limitations.  (Pl.'s Br. at 6-10.)

The Commissioner argues that (1) Claimant performed a significant amount of gainful activity after her alleged onset date, thereby undercutting her claim of a severe mental impairment;

8

(2) the ALJ's finding that Claimant did not have a severe mental impairment is supported by substantial evidence; and (3) the ALJ did not commit legal error at the administrative hearing. (Def.'s Br. at 8-18.)

Claimant first argues that the Commissioner erred in failing to find that Claimant suffered a severe mental impairment. Regarding the record before the ALJ, Claimant asserts that, based on evidence from Mr. Swick and Claimant's conduct of rocking back and forth at the administrative hearing, the ALJ should have found Claimant's adjustment disorder and level of intellectual functioning to be severe impairments. (Pl.'s Br. at 7.) Claimant further asserts that the Appeals Council erred in failing to remand her case after Claimant submitted evidence from Ms. Munday that Claimant had been diagnosed with intermittent explosive disorder and post traumatic stress disorder. (Pl.'s Br. at 7-8.) Claimant argues that Mr. Swick only examined Claimant once, and his report was inaccurate because he reported Claimant was never hospitalized for a mental disorder, when in fact, she was hospitalized twice in 1984. (Pl.'s Br. at 8.)

When evaluating a claimant's mental impairments, the Social Security Administration uses a special sequential analysis outlined at 20 C.F.R. §§ 404.1520a and 416.920a. First, symptoms, signs, and laboratory findings are evaluated to determine whether a claimant has a medically determinable mental impairment. §§

9

404.1520a(b)(1) and 416.920a(b)(1) (2003). Second, if the ALJ determines that an impairment(s) exists, the ALJ must specify in his/her decision the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s). §§ 404.1520a(b)(1) and (e), 416.920a(b)(1) and (e) (2003). Third, the ALJ then must rate the degree of functional limitation resulting from the impairment(s). §§ 404.1520a(b)(2) and 416.920a(b)(2) (2003). Functional limitation is rated with respect to four broad areas (activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation). §§ 404.1520a(c)(3) and 416.920a(c)(3) (2003). The first three areas are rated on a five-point scale: None, mild, moderate, marked, and extreme. The fourth area is rated on a four-point scale: None, one or two, three, four or more. §§ 404.1520a(c)(4) and 416.920a(c)(4) (2003). A rating of "none" or "mild" in the first three areas, and a rating of "none" in the fourth area will generally lead to a conclusion that the mental impairment is not "severe," unless the evidence indicates otherwise. §§ 404.1520a(d)(1) and 416.920a(d)(1) (2003). Fourth, if a mental impairment is "severe," the ALJ will determine if it meets or is equivalent in severity to a mental disorder listed in Appendix 1. §§ 404.1520a(d)(2) and 416.920a(d)(2) (2003). Fifth, if a mental impairment is "severe" but does not meet the criteria in the Listings, the ALJ will assess the claimant's residual functional capacity. §§ 404.1520a(d)(3)

10

and 416.920a(d)(3) (2003). The ALJ incorporates the findings
derived from the analysis in the ALJ's decision:

> The decision must show the significant history, including
> examination and laboratory findings, and the functional
> limitations that were considered in reaching a conclusion
> about the severity of the mental impairment(s).  The
> decision must include a specific finding as to the degree
> of limitation in each of the functional areas described
> in paragraph (c) of this section.

§§ 404.1520a(e)(2) and 416.920a(e)(2) (2003).

In his decision, the ALJ concluded that Claimant had mild
restrictions in activities of daily living, mild difficulties in
maintaining social functioning, mild difficulties in maintaining
concentration, persistence and pace, and no episodes of
decompensation. (Tr. at 18.) In making these findings, the ALJ
noted Claimant's activities of daily living and social functioning,
including crocheting, drawing, reading, walking around, visiting
with ladies at the shelter where she lived, sweeping/cleaning,
cooking, making the bed, taking out the trash, shopping for
groceries, watching television, going to the library, listening to
the radio and CDs, using the computer at the library, playing video
games on the computer and going to vocational rehabilitation twice
a week. (Tr. at 17.) Regarding Claimant's concentration, the ALJ
noted that Claimant reported on an Activities of Daily Living
Questionnaire that she had no problems with concentration and that
Mr. Swick indicated that Claimant was able to sustain reasonable
attention. (Tr. at 18.) Finally, the ALJ noted no episodes of

11

decompensation. (Tr. at 18.) The ALJ does not state explicitly in his decision that he determined Claimant's mental impairments were not severe. However, in light of the fact that the regulations direct a conclusion of not severe based on the ALJ's findings in the four areas of functioning and the lack of findings by the ALJ as to any mental limitations in his residual functional capacity finding, such a finding is implied.

The court proposes that the presiding District Judge find that substantial evidence supports the ALJ's finding that Claimant did not suffer a severe mental impairment. The court further proposes that the presiding District Judge find that substantial evidence supports the finding of the Appeals Council that the new evidence offered by Claimant did not provide a basis for changing the ALJ's decision.

The ALJ complied with the applicable regulations related to the evaluation of mental impairments, and his findings regarding Claimant's level of functioning in the four areas identified above are thorough and supported by substantial evidence. Indeed, Claimant does little to challenge these findings, relying instead on the diagnosis of Mr. Swick and Claimant's IQ score of 75. Despite Mr. Swick's diagnosis and the fact that Claimant's IQ score was 75, when her impairments are evaluated in keeping with the regulations, the determination that her mental impairments are not severe is supported by substantial evidence of record. Claimant's

12

activities of daily living are extensive, she appears to have little problem with social interaction (despite her difficult upbringing), and very little limitation in concentration, persistence and pace. There is no evidence of decompensation after Claimant's alleged onset.

Claimant asserts that her verbal IQ score of 75 necessitated a finding that Claimant's level of intellectual functioning was a severe impairment based on <u>Reichenbach v. Heckler</u>, 808 F.2d 309 (4th Cir. 1985). In <u>Reichenbach</u>, the claimant was examined by a psychologist at the request of the Secretary, now Commissioner. The psychologist found IQ scores of 75, 76 and 75, and diagnosed borderline intelligence. He noted that Rorschach testing suggested some deterioration in intellectual efficiency from formally higher levels due to long term alcohol abuse. The psychologist opined that although the claimant's mental impairments alone were not disabling, in combination with his other physical problems, there existed no vocational situation wherein the claimant could function adequately. <u>Id.</u> at 310. The court in <u>Reichenbach</u> concluded that the ALJ erred in failing to find any of Claimant's impairments severe because he failed to consider Claimant's impairments in combination. The court reasoned that "this conclusion comports with the Secretary's own policy as noted in Social Security Ruling 83-16 [superceded by SSR 85-16] which requires that for individuals whose mental impairments do not meet the listing (I.Q. 60 to 69, 20

13

C.F.R. subpart P, Appendix L 12.05), but are more than not severe (I.Q. of 80 or above, not severe, Social Security Ruling 82-55), the ALJ must determine the residual functional capacity of the individual which requires a combined analysis of all physical and mental impairments as well as an assessment of vocational factors." Id. at 312.

The facts of Reichenbach differ significantly from the instant matter. There is no evidence of deterioration in Claimant's level of intellectual functioning, and Claimant was never diagnosed with borderline intellectual functioning. Instead, Mr. Swick noted that Claimant had low average intelligence. Additionally, the evidence of record reveals that Claimant graduated from high school and attended two years of college, that she reads books, uses a computer and plays video games. Furthermore, the court notes that SSR 82-55, which stated that IQs above 80 are not severe, has since been rescinded. Moreover, the court notes that when the hypothetical was amended to include the limitations of a need for "low stress work with limited public contact involving simple repetitive tasks," the vocational expert indicated that the jobs identified earlier would remain. (Tr. at 570.)

Regarding the new evidence submitted to the Appeals Council, the Appeals Council specifically incorporated the evidence submitted by Claimant into the administrative record. As a result, the court must review the record as a whole, including the new

14

evidence, in order to determine if the Commissioner's decision is supported by substantial evidence. <u>Wilkins v. Secretary</u>, 953 F.2d 93, 96 (4th Cir. 1991).   Even considering the new evidence submitted to the Appeals Council, the extensive evidence from Claimant's psychiatric hospitalizations in the 1980s and the evidence from Ms. Munday, the decision of the Appeals Council that such evidence would not have changed the ALJ's decision is supported by substantial evidence.   The evidence of record submitted to the Appeals Council related to Claimant's hospitalizations in the 1980s reveals in exquisite detail that Claimant experienced a very difficult childhood, and there is no doubt that the sexual abuse she endured as a child is tragic. Nevertheless, substantial evidence of record suggests that after her alleged onset date, she does not have significant mental limitations in the areas of functioning identified in the regulations cited above.  Regarding the evidence from Ms. Munday, as the Commissioner points out, she is not an acceptable medical source as that term is defined in 20 C.F.R. §§ 404.1513 and 416.913 (2003), and instead, is considered an other source.  Furthermore, although Ms. Munday did not administer testing, she observed that Claimant's "[i]ntelligence appeared to be in the normal range." (Tr. at 507.)

Based on the above, the court proposes that the presiding District Judge find that substantial evidence supports the ALJ's

determination that Claimant does not suffer a severe mental impairment and the determination of the Appeals Council that new evidence offered by Claimant does not provide a basis for changing the ALJ's decision.

Claimant next argues that the ALJ erred in refusing to allow the vocational expert to testify as to the likely impact of Claimant's subtest scores on the WAIS-III on her ability to work. Claimant cites Hunt v. Massanari, 250 F.3d 622, 625-26 (8th Cir. 2001) in support of her position. (Pl.'s Br. at 9-10.)

At the administrative hearing upon questioning from Claimant's counsel, the vocational expert testified that he makes job placement decisions and that he occasionally looks to results of intellectual testing in making such decisions. (Tr. at 572.) Claimant's counsel then posed a hypothetical question that included Claimant's scores on the WAIS-III, but the ALJ instructed the vocational expert not to answer. The ALJ stated that: "You have to perform it not as to the test results but as to residual functional capacity." (Tr. at 573.)

The court proposes that the presiding District Judge find that the ALJ did not err in instructing the vocational expert not to answer Claimant's hypothetical question including Claimant's IQ scores and instead, advising that he may rephrase the question to include a description of the effect of Claimant's level of intellectual functioning on her residual functional capacity. As

16

discussed above, substantial evidence supports the ALJ's determination that Claimant does not suffer a severe mental impairment and as such, limitations related thereto need not be included in the hypothetical question. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987) (While questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record.); see also Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983) (the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe).

Furthermore, the hypothetical question to a vocational expert should be phrased in such a way, that the vocational expert understands the particular "abilities and limitations" of the hypothetical claimant. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989); see also Russell v. Barnhart, No. 02-1201, 2003 WL 257494, at *5 (4th Cir. Feb. 7, 2003) ("[T]he ALJ adequately reflected [the claimant's] level of intellectual functioning in his hypothetical question by including limitations as to [claimant's] education level, ability to maintain attention and concentration, perform at a consistent pace, and to complete a work day or work week free from psychologically based symptoms."). The usefulness of a hypothetical question describing IQ scores without some additional description of the limitations resulting from a claimant's level of

17

intellectual functioning is questionable.  Notably, when the ALJ posed a hypothetical question that included the limitations that the hypothetical individual would require low stress work with limited public contact involving simple, repetitive tasks, the vocational expert testified that the jobs earlier identified would not be affected.  (Tr. at 570.)

Finally, Claimant's reliance on Hunt is misplaced.  Hunt does not stand for the proposition that "IQ scores in the range exhibited by Ms. Holcomb should be included in the hypothetical question to the vocational expert" (Pl.'s Br. at 10), as Claimant suggests.  The claimant in that case suffered from borderline intellectual functioning, with IQ scores of 71 (full scale), 76 (verbal) and 65 (performance).  Hunt, 250 F.3d at 624.  The court concluded in that case that the ALJ's decision was not supported by substantial evidence because the ALJ erred in failing to find Claimant's level of intellectual functioning to be severe and in failing to include in the hypothetical question, any reference to Claimant's borderline intelligence.  Id. at 625-26.  Claimant's scores are higher than those of the claimant in Hunt, and Claimant has never been diagnosed with borderline intellectual functioning. As discussed above, the ALJ's determination that Claimant does not suffer from severe mental impairments is supported by substantial evidence.  Thus, the court proposes that the presiding District Judge find that the ALJ did not err in instructing the vocational

18

expert not to answer a hypothetical question including Claimant's IQ scores and instead, advising Claimant's counsel to rephrase the question to describe the limitations caused by Claimant's level of intellectual functioning.

Motion for Remand

Turning to Plaintiff's Motion for Remand, Claimant has moved this court, pursuant to the sixth sentence of 42 U.S.C. § 405(g), to remand her claim to the administrative level for consideration of new evidence.

In considering Claimant's Motion, the court notes initially that the social security regulations allow two types of remand. Under the fourth sentence of 42 U.S.C. § 405(g), the court has the general power to affirm, modify or reverse the decision of the Commissioner, with or without remanding the cause for rehearing for further development of the evidence. 42 U.S.C. § 405(g); Melkonyan v. Sullivan, 501 U.S. 89, 97 (1991). Where there is new medical evidence, the court may remand under the sixth sentence of 42 U.S.C. § 405(g) based upon a finding that the new evidence is material and that good cause exists for the failure to previously offer the evidence. 42 U.S.C. § 405(g); Melkonyan, 501 U.S. at 97. The Supreme Court has explicitly stated that these are the only kinds of remand permitted under the statute. Melkonyan, 501 U.S. at 98.

In order to justify a remand to consider newly submitted

19

medical evidence, the evidence must meet the requirements of 42
U.S.C. § 405(g) and <u>Borders v. Heckler</u>, 777 F.2d 954, 955 (4th Cir.
1985).[1]  In <u>Borders</u>, the Fourth Circuit held that newly discovered
evidence may warrant a remand to the Commissioner if four
prerequisites are met:   (1) the evidence is relevant to the
determination of disability at the time the application was first
filed and not simply cumulative; (2) the evidence is material to
the extent that the Commissioner's decision "might reasonably have
been different" had the new evidence been before him; (3) there is
good cause for the claimant's failure to submit the evidence when
the claim was before the Commissioner; and (4) the claimant has
presented to the remanding court "at least a general showing of the
nature" of the newly discovered evidence.  <u>Id.</u>

The court proposes that the presiding District Judge find that

---

[1] Within relevant case law, there is some disagreement as to whether 42
U.S.C. § 405(g) or the opinion in <u>Borders</u> provides the proper test in this
circuit for remand of cases involving new evidence.  This court will apply the
standard set forth in <u>Borders</u> in accordance with the reasoning previously
expressed in this district:

> The court in <u>Wilkins v. Secretary of Dep't of Health &</u>
> <u>Human Servs.</u>, 925 F.2d 769 (4th Cir. 1991), suggested
> that the more stringent <u>Borders</u> four-part inquiry is
> superseded by the standard in 42 U.S.C. 405(g).  The
> standard in § 405(g) allows for remand where "there is
> new evidence which is material and . . . there is good
> cause for the failure to incorporate such evidence
> into the record in a prior proceeding."  However,
> <u>Borders</u> has not been expressly overruled.  Further,
> the Supreme Court of the United States has not
> suggested that <u>Borders</u>' construction of § 405(g) is
> incorrect.  Given the uncertainty as to the contours
> of the applicable test, the Court will apply the more
> stringent <u>Borders</u> inquiry.

<u>Brock v. Secretary, Health and Human Servs.</u>, 807 F. Supp. 1248, 1250 n.3
(S.D.W. Va. 1992) (citations omitted).

the new evidence offered by Claimant does not satisfy all four requirements identified in <u>Borders</u>. The ALJ's decision is dated August 26, 2003, while the Appeals Council issued its decision on March 17, 2004. The letter from Claimant's rehabilitation counselor, Ms. Lokey, is dated September 14, 2004, well after both the decision of the ALJ and the Appeals Council. It is unclear from Ms. Lokey's letter when she assumed responsibility for Claimant's case or if she counseled Claimant during the time prior to the decision of the ALJ or the Appeals Council. While she states that Claimant failed to complete a business education program, she also does not provide the date of that program. In short, it does not appear that the new evidence is relevant to the determination of disability at the time the application was first filed.

Nor can the court recommend that the new evidence might reasonably have resulted in a different finding by the ALJ had this evidence been before him. While Ms. Lokey suggests Claimant's level of intellectual functioning may have been lower than that found by the ALJ in his decision, there is no diagnostic evidence to support her hunch. Nor does she provide any other objective evidence supporting her opinion that Claimant cannot work. Furthermore, substantial evidence of record before the ALJ reveals that at worst, Claimant level of functioning was in the low average range. If anything, the evidence from Ms. Lokey suggests that

Claimant's level of functioning had improved, as she had moved to public housing by November of 2003.

Although Claimant arguably satisfies the final two requirements of Borders, the court proposes that the presiding District Judge find that Claimant's Motion for Remand must be denied because Claimant failed to satisfy ALJ four requirements of Borders.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge DENY the Plaintiff's Motion for Judgment on the Pleadings, DENY the Plaintiff's Motion for Remand for Consideration of New and Material Evidence, GRANT the Defendant's Motion for Judgment on the Pleadings, AFFIRM the final decision of the Commissioner and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Joseph R. Goodwin.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made,

22

and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

    May 9, 2005                      *Mary E. Stanley*
        Date                        Mary E. Stanley
                                United States Magistrate Judge

23